Barbara J. Forde (013220)
BARBARA J. FORDE, P.C.
20247 N. 86th Street
Scottsdale, AZ  85255
BarbaraJForde@gmail.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

KATRINA PERKINS STEINBERGER, as Executor of the Estate of Charles A. Perkins, deceased, and individually,

Plaintiff,

v.

INDYMAC MORTGAGE SERVICES, et al,

Defendants.

---------------------------------------------------

and Counterclaim and Third-Party Complaint

Case No. 2:15-cv-00450-ROS

**KATRINA PERKINS STEINBERGER'S MOTION TO REMAND**

## I.    INTRODUCTION.

Pursuant to 28 U.S.C. § 1447(c), 28 U.S.C. § 1332 and other applicable law, Plaintiff/Counterdefendant Katrina Perkins Steinberger hereby files her Motion to Remand this case to the Maricopa County Superior Court.  Because diversity of citizenship does not exist, and Plaintiff's case involves important legal issues of substantial public importance, presenting issues of first impression pertaining to interpretation of state laws, this matter should be remanded to state court, the forum of Plaintiff's choosing.

## II.    PROCEDURAL AND FACTUAL BACKGROUND.

Over four (4) years ago, on November 3, 2010, Plaintiff filed her lawsuit against Defendants IndyMac Mortgage Services, a division of OneWest Bank ("OneWest"), Deutsche Bank National Trust Company as Trustee of the IndyMac INDX Mortgage Loan Trust 2005-AR14 ("DBNTC"), Quality Loan Service Corporation ("QLS"), and Mortgage Electronic Registration Systems ("MERS"), in her chosen forum of Maricopa County

Superior Court.  Plaintiff asserted both equitable grounds for relief (e.g., injunctive and declaratory relief) and legal grounds for relief (e.g., negligent performance of an undertaking, breach of contract).  Plaintiff then hired Undersigned Counsel, who filed a First Amended Complaint on December 22, 2010.

On January 6, 2011, Plaintiff obtained a temporary restraining order preventing the Defendants from proceeding with the trustee's sale, after posting a total of $7,500 in bond funds.  Ms. Steinberger had to liquidate personal possessions and stock, at a loss, in order to post the bond.

A preliminary injunction hearing was set for January 18, 2011, which upon Defendants' request was postponed, so that they would have time to consider a loan modification.  When the next hearing date of March 18, 2011, arrived, no decision had been made on a loan modification, so the parties again stipulated to move the hearing date. On March 24, 2011, Judge McVey, newly assigned to the matter, refused to reset the preliminary injunction hearing, but instead placed the case on the inactive calendar and left it to the parties to request a scheduling conference or a new preliminary injunction hearing date, before May 9, 2011.  No party ever requested a preliminary injunction hearing; instead, the parties requested a scheduling conference.  As a result, the TRO originally issued in January of 2011 became a permanent injunction against sale.

On April 27, 2011, the OneWest Defendants filed a Motion for Court Permission to Cancel and Re-Notice Trustee's Sale, which Judge McVey granted on June 13, 2011.  The Defendants were given the right to cancel and re-notice the sale, but were ordered not to actually conduct a trustee's sale until such time as the January 6, 2011 TRO was dissolved or otherwise modified by the court.

All the while, the OneWest Defendants continued to lead Ms. Steinberger to believe that she would obtain a loan modification.  Ms. Steinberger was offered a trial period plan on March 12, 2010, upon which she fully performed; yet the OneWest Defendants failed and refused to grant a permanent loan modification.  Rather, the OneWest Defendants required Ms. Steinberger to submit entirely new loan modification applications no less

than 2 more times, on February 10, 2011, and August 22, 2011.  Ms. Steinberger <u>never</u> received the permanent modification to which she was entitled, and never received a response to either of her subsequent applications, even with assistance by John O'Neal of Quarles & Brady.

On August 2, 2011, QLS filed a Motion to Dismiss on Counts 2, 3, 4, 6, 7, 8, and 9 of the First Amended Complaint, and Motion for Summary Judgment, on Count 1.  On October 13, 2011, Judge McVey granted the QLS Motion to Dismiss but denied the Motion for Summary Judgment.

On October 28, 2011, Defendants OneWest, DBNTC and MERS (the "OneWest Defendants"), filed a Motion to Dismiss all claims against them. While the OneWest Defendants' Motion to Dismiss was pending, on February 24, 2012, Judge McVey set the matter for a 5 day jury trial beginning March 18, 2013.  Also while the Motion to Dismiss was pending, on March 12, 2012, Judge McVey ordered a settlement conference take place on April 6, 2012.

Just 10 days after ordering a settlement conference, Judge McVey granted the OneWest Defendants' Motion to Dismiss in its entirety, on March 22, 2012.

Ms. Steinberger filed a Petition for Special Action related to the dismissal of the OneWest Defendants on April 18, 2012, argument was heard on May 9, 2012, and on May 10, 2012, jurisdiction of the Petition was accepted.  On January 30, 2014, the Arizona Court of Appeals issued its decision on the Petition, reversing the dismissal of all claims except for the fraud-based claims and quiet title under A.R.S. § 12-1101 *et seq*. *Steinberger v. McVey ex rel. Maricopa County,* 234 Ariz. 125, 318 P.3d 419 (Ct. App. 2014).

After oral argument in the Arizona Court of Appeals, during which it was clear the 3-Judge panel understood and agreed with Ms. Steinberger's arguments, on May 25, 2012, the Defendants vacated the trustee's sale.  The purpose of vacating the sale was to obtain a dismissal of the Petition for Special Action based on mootness, with the stated intent of re-noticing the sale later.  Defendants then filed a motion to dismiss the appeal, seeking to

nullify Ms. Steinberger's appeal rights with respect to the dismissal of her claims.  The Court of Appeals refused to dismiss the appeal, ruling that many of the defects alleged in the First Amended Complaint could not be remedied by re-noticing the sale.  The appellate court ordered the Defendants not to conduct a sale until further order of the court.

On May 9, 2012, QLS filed another Motion for Summary Judgment on Count 1, the only remaining count against QLS.  QLS argued that the Count could not stand in the face of A.R.S. § 33-807(E), among other grounds.  The Motion was denied on September 16, 2012.  The matter was set for trial to begin on March 18, 2013.  At a pretrial management conference on March 8, 2013, a pro tem judge assigned to the matter, told the parties she did not think the remaining claim was viable, based on her own research.  Several days later, without allowing any briefing on the issue, the pro tem judge dismissed the remaining claim and vacated the trial.  Ms. Steinberger appealed, and QLS settled with Ms. Steinberger.   The appeal was dismissed on January 13, 2014.

On January 30, 2014, the Court of Appeals issued its decision on the Petition for Special Action which had been argued 18 months before.  The Court of Appeals reversed the dismissal of seven (7) of Ms. Steinberger's claims against the OneWest Defendants.

The case was remanded to Superior Court.  The OneWest Defendants and Plaintiff agreed to engage in informal settlement negotiations, but Ms. Steinberger's informal offer never garnered a response.   The parties then participated in a court-ordered status conference on January 7, 2015.  During the conference, Plaintiff informed the Court that she would need to amend her complaint to add Defendant Smith and add Defendant Ocwen, because the loan servicer on the Steinberger loan was changed during the pendency of the special action, from OneWest to Ocwen Loan Servicing.[1]  The Defendants asked to the Court to allow discovery to begin; Plaintiff argued that no discovery should take place until a formal settlement conference occurred.  The Court ordered that Ms. Steinberger file her Second Amended Complaint by February 9, 2015, which she did.  The

---

[1] OneWest remains a Defendant because by their counsel's account, OneWest retains some type control over this litigation in spite of no longer being the loan servicer.

parties agreed to participate in a court-ordered settlement conference, and the Court ordered that no discovery occur until after the settlement conference took place.   A settlement conference was set for April 21, 2015.

On March 11, 2015, newly-added Defendant Ocwen removed this matter to federal court, claiming that there was diversity of jurisdiction, and wrongly asserting that the Arizona Defendant Keeley Smith "is fraudulently joined."  Doc. 1.  Ocwen has no good faith basis for asserting that no valid claim exists against Ms. Smith; there is no diversity.

### III.   LEGAL ANALYSIS.

**A.**   **Diversity of Citizenship Does Not Exist; Defendant Smith was not Fraudulently Joined; this Matter Should be Remanded.**

The burden of showing diversity of citizenship is on the removing party. *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir.1990).   Defendant Smith is an Arizona attorney and resident of Maricopa County.   The removal statute must be strictly construed, and any doubt is resolved in favor of remand.   *Provincial Gov't of Marinduque v. Pacer Dome, Inc.,* 582 F.3d 1083, 1087 (9th Cir. 2009).  There is a "strong presumption" against removal jurisdiction.  *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1042 (9th Cir. 2009).  Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance."  *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir. 1996).

Defendant Ocwen's Notice of Removal incorrectly asserts that the Arizona Defendant "has no bearing on this case," breezily concluding that Defendant Smith was "fraudulently joined."  *See* Doc. 1 ¶ 17.

"Joinder is fraudulent if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."  *Hunter* 582 F.3d at 1043.  In making the determination of whether a cause of action is stated against a resident defendant:

> [A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant and [] the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id.* at 1044 (quotations and citation omitted). The removing defendant must show "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Defendants have the added burden of establishing fraudulent joinder by "clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

There is a general presumption *against* fraudulent joinder. *Pampillonia,* 138 F.3d at 461. All ambiguities in state law must be resolved in the plaintiff's favor. *Dodson v. Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1998).

In attempting to justify its improper removal, Ocwen makes many unsupported assertions regarding Smith; for instance, that "she was substituted as Trustee for purposes of non-judicial foreclosure proceedings." But no sale was pending at the time of substitution, nor has any sale been initiated, since. Motivation for substituting Smith as trustee under the Deed of Trust, who was then a lawyer at the Defense Counsel's law firm, is not reflected in the record, nor attested to, by Defendant Smith.[2] Speculation about the motive of substituting an attorney at Defense Counsel's firm as trustee, is improper.

To defend its removal in spite of an Arizona Defendant, Ocwen states that under A.R.S. § 33-807(E), the claims against Defendant Smith are invalid, because "simply being named as a Trustee is not a basis for liability in Arizona." *See* Doc. 1 ¶ 17. Ms. Smith was *not* sued *only* because she is the present trustee under the Deed of Trust. Even a

---

[2] Indeed, at the time Attorney Smith was substituted as trustee, it seemed like in interesting choice given that Plaintiff would have to sue an attorney at the Defense Counsel's firm, thereby effectively conflicting Quarles & Brady out from further representation of the Defendants.

cursory review of the Second Amended Complaint ("SAC") reveals that Smith has been sued for a number of reasons, including the fact that her Substitution, recorded against title, is a document which is forged, groundless, contains a material misstatement or a false claim, or is otherwise invalid.  *See, e.g.,* Doc. 1-2 ¶¶ 141-144; 224-239.

In particular, Defendant Smith knew, particularly since she was an attorney in the law firm of Quarles & Brady which had been defending this lawsuit for two years including defending the Petition for Special Action, that the beneficiary under the Deed of Trust was not and could not be, DBNTC as Trustee.  Rather, DBNTC is merely the Trustee of the Trust, and functions purely for the benefit of the Certificateholders of the Trust, who are the Lender (if anyone is).  *See* Doc. 1-2 ¶ 144.  OneWest Bank itself admitted in this lawsuit that the Certificateholders are the Note Holder, and the Pooling and Servicing Agreement ("PSA") clearly states that DBNTC is simply the Trustee of the Trust, not a beneficial holder of an interest in the Trust Fund.  *See, e.g.,* Exhibit 5 to SAC (the PSA) §§ 2.01(b), (c), 8.03.  Yet Defendant Smith was substituted as trustee of the Deed of Trust through a document signed by OneWest Bank as attorney in fact for DBNTC as Trustee, claiming to be the beneficiary.  *See* Exhibit 21 to SAC.  Under Arizona statute, the beneficiary is "the person for whose benefit a trust deed is given."  A.R.S. § 33-801(1).  That person must, therefore, be the Note Holder as defined in the Note; in other words, the Lender.  The Deed of Trust language confirms this conclusion, when it states that it "secures to Lender the repayment of the Loan."  *See* Exhibit 2 to SAC, page 3.  Without doubt, DBNTC as Trustee is ***not*** the person for whose benefit the trust deed was given.  *See* Doc. 1-2 ¶ 143.

Defendant Smith is liable because she is named in the Substitution.  A.R.S. § 33-420(C).  Plaintiff sent Ms. Smith a demand under A.R.S. § 33-420(C) on February 10, 2015, to remove herself as trustee; she has failed and refused to do so.

Plaintiff has valid claims against Defendant Smith in, among other places, Counts 1, 3, 4, and 6 because of the recorded groundless, false and invalid Substitution containing

her name, thereby clouding title, breaching the duty of good faith and fair dealing owed by the trustee to the trustor, and violating A.R.S. § 39-161 as well.  Ocwen's argument that the recorded documents at issue must contain material misstatements is untrue; the statute is written in the disjunctive, listing at least 4 separate grounds upon which a claim may be stated.  Indeed, the Ninth Circuit recently reversed dismissal of claims under A.R.S. § 33-420 in the multi-district MERS litigation, clearly holding that a claim based on robosigning (forgery) of foreclosure documents was well-plead.  *In re Mortgage Electronic Registration Systems, Inc.,* 754 F.3d 772, 783-84 (9th Cir. 2014).

Plaintiff further notes, that she sued the original trustee under the Deed of Trust QLS, and that Superior Court Judge McVey **twice** denied motions for summary judgment filed by QLS based on A.R.S. § 33-807(E), among other grounds.  That claim against QLS was later wrongfully dismissed by a Pro Tem Judge sua sponte; Plaintiff appealed, and QLS settled.

It can hardly be said that joining a trustee under a Deed of Trust is a "fraudulent joinder" or that no claims can be stated against such trustees.  When the new trustee Smith was substituted by a document containing groundless claims, false claims, *and* material misstatements, Plaintiff sued her.  Suing Smith is not an improper attempt to destroy diversity; Plaintiff is simply continuing to pursue all her valid and legitimate claims.

Ocwen next demonstrates a fundamental misunderstanding of claims under A.R.S. § 33-420, by stating that a judicial foreclosure "moot[s] any allegation related to the non-judicial foreclosure process…."  But this statutory claim has no direct relation to foreclosure; it arises out of any document recorded against title, which is forged, groundless, contains a material misstatement, makes a false claim, or is otherwise invalid. *See, e.g., Sitton v. Deutsche Bank Nat. Trust Co.,* 233 Ariz. 215, 311 P.3d 237, 240-41 ¶¶ 15, 16 (Ct. App. 2013)(holding homeowner had standing to make A.R.S. § 33-420 claim even though trustee's sale had already occurred and homeowner was no longer on title; relevant question is whether at-issue document was recorded when homeowner was on

8

title).   A non-judicial foreclosure does not have to be pending to state a claim under the statute.  *See, e.g., Delmastro & Eells v. Taco Bell Corp.,* 228 Ariz. 134, 142, 263 P.3d 683, 691 (Ct. App. 2011)(recording of a mechanic's lien failing to contain all information required by statute subjects contractor to liability under A.R.S. § 33-420); *Evergreen West, Inc. v. Boyd,* 167 Ariz. 614, 619, 810 P.2d 612, 617 (Ct. App. 1991)(A.R.S. § 33-420 applies to the wrongful filing of a lis pendens).

Plaintiff has pled a valid claim against Defendant Smith under A.R.S. § 33-420. *See, e.g.,* Doc. 1-2 ¶¶ 141-144; 224-239.   Defendants cannot ignore the claims made against an Arizona resident just because they want to take the case away from the forum which recognized seven (7) of Plaintiff's claims as valid.

And finally, Ocwen states "on information and belief" that Defendant Smith "will shortly be withdrawing as Trustee."  *See* Doc. 1 ¶ 17.  But this of course has not occurred; rather, Defendant Smith filed a Motion to Dismiss.  *See* Doc. 17.[3]

Defendant Ocwen has not met the strenuous standard of proof for fraudulent joinder, arguing **no evidence** to support the contention that Defendant Smith is not a proper defendant under A.R.S. §33-420, or any other claim.

Keeley Smith is a proper Defendant, and is an Arizona citizen for diversity purposes.  Ocwen has failed to carry its "clear and convincing" burden of showing that Defendant Smith was fraudulently joined.  Ocwen has failed to provide any viable basis for why this Court can simply disregard the numerous claims alleged against Defendant Smith.  There is no complete diversity; remand is appropriate.

---

[3]  Plaintiff notes that if Defendant Smith later "withdraws" as trustee, Plaintiff is still entitled to seek damages under A.R.S. § 33-420 from her under the statute, and also attorney's fees and costs for having to respond to her motion to dismiss.

**B.   Ocwen's Attempt to Forum Shop, by Removing this Case Pending for Over Four Years in Superior Court, Must be Denied.**

Ms. Steinberger filed this lawsuit in November of 2010.  She chose the forum of Maricopa County Superior Court.  *Not one of the Defendants removed the case to federal court;* rather, OneWest, IndyMac Mortgage, Deutsche Bank as Trustee, and Quality Loan Service, all affirmatively chose to stay in Superior Court.   As the comprehensive procedural summary above demonstrates, and the vast volume of pleadings that Ocwen had to upload into the District Court files confirms, this matter is fully and completely entrenched in the Superior Court.  The litigation has been pending for nearly 4 ½ years, during which time the Court issued a temporary restraining order, held a temporary restraining order hearing, ruled on two motions for summary judgment, two motions to dismiss, a motion to cancel and re-notice trustee's sale, a motion for a protective order, a motion for reconsideration, several motions to compel, a motion for attorney's fees, a motion for sanctions, a motion for entry of final judgment, issued a scheduling order, conducted a pretrial management conference, set two different settlement conferences (neither of which occurred), and more.  And, of <u>paramount importance</u>, the Arizona Court of Appeals reversed dismissal of seven (7) of Ms. Steinberger's claims, recognized the existence of claims never before approved by an Arizona court, and remanded to the Superior Court to move forward on the merits.  The Supreme Court of Arizona declined to hear review, thereby cementing the *Steinberger* rulings.

When a litigant seeks to switch to federal court and abstention is requested, the potential of forum shopping or seeking to avoid adverse rulings by the state court, must be considered.  *Nakash v. Marciano,* 882 F.2d 1411, 1417 (9th Cir. 1989).   Whether the litigant attempting to change forum would gain a tactical advantage from the application of federal court rules, must also factor in the analysis.  *Weitz Co. LLC v. RCI Systems Inc.,* 2014 WL 3720543 at *5 (D. Ariz. July 28, 2014).  These dangers weigh heavily in favor of abstention.  *Nakash,* 882 F.2d at 1417.

The Arizona Court of Appeals vindicated Plaintiff's claims in the groundbreaking *Steinberger*[4] decision in January of 2014.  There can be little doubt that Ocwen's improper removal of this case to federal court is an attempt to forum shop to its, and now the other Defendants,' advantage.  They seek to avoid the adverse ruling in *Steinberger* and will, without doubt, argue that it should no longer apply because standards in federal court differ.

*Steinberger* is the embodiment of the desperately-needed result of allowing foreclosure cases to remain in state court where they belong.  When the state law claims were left in state court where they belong, the law changed through *Steinberger*, and the Arizona Court of Appeals made itself heard.  The *Steinberger* Court laid down the framework for valid claims against foreclosing entities.  This new jurisprudence must continue to be conducted in state court, to allow the state court judges to fill in any blanks related to the claims being pursued.  "Needless decisions of state law by federal courts should be avoided as a matter of comity and in order to procure for the litigants 'a surer-footed reading of applicable law.'"  *In re Casamont Investors, Ltd.,* 196 B.R. 517, 524 (9th Cir. BAP 1996).  The Ninth Circuit continued:

> [I]nterests in real property, are issues with which the state court can be presumed to be more familiar.  The bankruptcy court should have considered that the matter could likely have been resolved more expeditiously not only in the state trial court but also in the state appellate courts.  Judicial economy did not dictate that jurisdiction be retained.
>
> * * *
>
> **By retaining jurisdiction the bankruptcy court also diverted the potential review of this complex area of real property law from the state to the federal appellate structure**.  Decisions of the federal courts on state law issues are not binding on [] state courts.  **The state courts potentially lost an opportunity for binding precedent on these issues**. … [I]t is clear that the legal analysis required interpretation of difficult state law from which there was no distinct answer.  No doubt the state court will appreciate the ground work laid by the trial court, however, **if comity is anything it is the concept that, all else being equal, state law issues ought to be decided by state courts.**

---

[4] 234 Ariz. 125, 318 P.3d 419 (Ct. App. 2014).

1    *Casamont,* 196 B.R. at 524-525 (emphasis supplied).  *See also, Molina v. City of Phoenix*

2    *Police Dept.,* 2007 WL 1063162 at \*2 (D.Ariz. April 5, 2007)(even though the state law

3    claims "do not appear to present novel issues of state law, the Court finds that it is

4    preferable for a state court to apply state law to Plaintiff's state law claims.").

5              Important here, is the fact that federal courts cannot create state law;

6    therefore, this matter should be remanded.  *See, e.g., Erie R. Co. v. Tompkins*, 304 U.S. 64,

7    79, 58 S.Ct. 817, 823 (1938)(in diversity, federal court may not create state law; "the

8    authority and only authority is the State," and "the voice adopted by the State as its own …

9    should be the last word.").  *Steinberger* was a ground-breaking decision made by the Court

10   of Appeals.  Ocwen and the other Defendants will likely argue that *Steinberger* does not

11   apply, since they are now seeking judicial foreclosure.  Therefore, new and additional state

12   law issues will have to be decided in the context of *Steinberger*.  Any further points of

13   Arizona policy and the interpretation of judicial and non-judicial foreclosure law in light of

14   this new decision, should be left to the Arizona courts in this matter.  Federal courts should

15   exercise their discretion and "leave these problems of [state] law to the State court where

16   each may be handled as 'one more item in a continuous series of adjustments.'"  *Burford v.*

17   *Sun Oil Co.,* 319 U.S. 315, 332, 63 S.Ct. 1098, 1107 (1943).  Equitable discretion should

18   be exercised to give the state courts the first opportunity to consider basic problems of

19   state policy.  *Id.*

20        Ocwen's forum shopping is also evident in the fact that *only* Deutsche Bank as

21   Trustee has asserted a Counterclaim, and *only* DBNTC as Trustee has filed a Third-Party

22   Complaint.  DBNTC as Trustee waived any previous removal right, and chose to remain in

23   Superior Court back when this matter began in 2010.   DBNTC as Trustee's claims,

24   therefore, should be decided in state court, the forum of its choosing.

25        Judicial economy favors remand to Superior Court, as does fairness to the Plaintiff

26   who chose the forum in which she has litigated for over 4 years, and comity to the state of

27   Arizona.  *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 343, 108 S. Ct. 614, 615

28

(1988)(considerations on a motion to remand are judicial economy, fairness to the litigants, and comity to the State).

## C.   Burford Abstention Requires Remand of This Lawsuit.

The Ninth Circuit strictly construes the removal statute *against* removal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Schulman v. West Jet Aircraft, LLC,* 2010 WL 892184 *1 (D. Ariz. March 10, 2010). Pragmatic considerations of judicial efficiency, as well as reasons of comity between federal and state courts, have lead the United States Supreme Court to construct several abstention doctrines. One of these doctrines is Burford abstention, which applies here, making remand to Maricopa County Superior Court, the necessary course of action.

Burford abstention is appropriate in certain circumstances. Federal courts should abstain from deciding difficult questions of state law bearing on policy problems of substantial public import, whose importance transcends the result in the case before the court. *International Coll. of Surgeons v. Chicago,* 153 F.3d 356, 362 (7th Cir. 1998)(*citing Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 726-27, 116 S. Ct. 1712 (1996)). Federal courts should also abstain if federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public importance. *Id.*

The United States Supreme Court enunciated this type of abstention back in 1943, and courts have been exercising it ever since:

> Although a federal equity court does have jurisdiction of a particular proceeding, it may, in it sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, "refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest," for it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."

*Burford v. Sun Oil Co.,* 319 U.S. 315, 316-7, 63 S.Ct. 1098, 1099 (1943)(quoting *United States v. Dern,* 289 U.S. 352, 360, 53 S.Ct. 614, 617 (1934); *Pennsylvania v. Williams*, 294

13

U.S. 176, 185, 55 S.Ct. 380, 385 (1935)).  "There must be reluctance even greater when the rights are strictly local, jurisdiction having no other basis than the accidents of residence." *Hawks v. Hamill*, 288 U.S. 52, 61, 53 S.Ct. 240, 243 (1933).

When no constitutional issue is raised, abstention is appropriate if the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244 (1976).  It is enough for Burford abstention that the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S. Ct. at 1245; *State v. Mushroom King, Inc.,* 77 B.R. 813, 819 (D. Or. 1987).  If an issue in the litigation is one of first impression for the state, which significantly affects the state's statutory scheme, the state court should decide the matter.  *See id.* ("I conclude that this issue is one of first impression significantly affecting the state's statutory scheme ….  It is a matter of substantial public concern and important state policy.  …  For these reasons, and as a matter of comity between the federal and state systems, I grant the state's motion to abstain and remand.").  *See also, Kirkbride v. Continental Cas. Co.,* 696 F.Supp. 496, 499 (N.D. Cal. 1988)(a question of first impression is a matter of substantial state interest in abstention analysis).

The Ninth Circuit has confirmed that where the dispute in a lawsuit is over a question of state law, the state court is in the "best position" to resolve those legal questions.  *Hawthorne Savings F.S.B. v. Reliance Ins. Co.*, 421 F.3d 835, 845 (9th Cir. 2005)(*opinion amended by Hawthorne Savings F.S.B. v. Reliance Ins. Co.,* 433 F.3d 1089 (9th Cir. 2006)).  This has long been the law.  "[N]o matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination." *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 27, 79 S.Ct. 1070, 1072 (1959).

In 2005, the Ninth Circuit reaffirmed that:

> *Burford* abstention is designed to limit federal interference with the development of state policy. It is justified where the issues sought to be adjudicated in federal court are primarily questions regarding that state's laws.

*Hawthorne Savings,* 433 F.3d at 847 (*quoting Tucker v. First Maryland Sav. & Loan, Inc.,* 942 F.2d 1401, 1407 (9th Cir. 1991)).

As the too-long and tortuous factual and procedural history of this case demonstrates, one can hardly imagine a more appropriate application of abstention principles. The Arizona Court of Appeals overturned the dismissal of seven (7) of Ms. Steinberger's claims, and in doing so put down a foundational building block related to state foreclosure law, which had never been laid before. The continued application and development of the legal principles set forth in *Steinberger,* by the state courts, is necessary to bring these claims to "determination," rather than a "forecast," "no matter how seasoned the judgment of the district court may be…." *See Hawthorne Savings.*

And now, the Defendants' new tactic of seeking judicial foreclosure, makes remand even more necessary. The application of *Steinberger* and the interpretation of applicable statutes and the claims found well-plead by the Court of Appeals, require continued oversight and handling by the Arizona state courts. Otherwise there is a real possibility of contradictory adjudications in this lawsuit, by state and federal courts; this is an unacceptable result. "Conflicts in the interpretation of state law, dangerous to the success of state policies, are *almost certain* to result from the intervention of the lower federal courts." *Burford,* 319 U.S. at 334, 63 S.Ct. at 1107.

The Arizona Court of Appeals has ruled that legal issues involving foreclosure requirements are matters of statewide public importance. *Steinberger,* 125 Ariz. at 131, 318 P.3d at 425 ¶ 20. The issues presented in this case transcend the results of this particular piece of litigation. Servicers, Trustees, Lenders and other named defendants routinely remove these cases to federal court, in spite of the plaintiff's choice of forum and in spite of the issues of state, not federal, concern. Continued federal court determination

of these cases is disruptive of Arizona's need to establish a coherent policy in resolving the homeowner lawsuits filed here.  The Arizona state courts must be allowed to develop the state's policy and law in these critical areas of substantial statewide significance. Numerous District Court cases are in accord.  *See, e.g., Tompkins v. Bank of America N.A.,* 2010 WL 2036563 at *6 (D. Ariz. 2010)("Only in the 'unusual case' should federal courts retain jurisdiction over the state law claims.")(quoting *Gini v. Las Vegas Metro. Police Dept.,* 40 F.3d 1041, 1046 (9th Cir. 1994)); *Coit v. The Biltmore Bank,* 2010 WL 6026563 at *2 (D. Ariz. 2010)(remanding a quiet title action to state court after dismissing plaintiff's federal law claim, because "the court should decline jurisdiction over the state claims."); *Soto v. America's Servicing Co.,* 2009 WL 1872691 at *2 (D. Ariz. 2009)("the Arizona courts are a preferable forum for obtaining an interpretation of [Arizona] law.").

Remand will allow the Arizona state courts to rule on these critical, local issues, and be an exercise of comity and judicial economy on the part of this Federal District Court.  Burford abstention is appropriate.

### D.    Plaintiff is Entitled to Her Attorney's Fees.

Plaintiff hereby makes a request, pursuant to 28 U.S.C. § 1447(c), for her just costs and actual expenses, including attorney fees, for having to file this Motion.  This matter was improperly removed, as there is no diversity.

### IV.    CONCLUSION.

Based on the foregoing, Plaintiff respectfully request that this Court remand her lawsuit to Maricopa County Superior Court.  Ms. Steinberger has stated valid claims against an Arizona Defendant; there is no diversity.  In the alternative, Plaintiff requests that this Court apply the principles of comity, judicial economy, convenience and fairness, and abstain from deciding her lawsuit.  Ms. Steinberger has been litigating in state court for over 4 years; it is not appropriate for the federal court to now step in.  The state courts of Arizona have not had the opportunity to rule on a number of claims being asserted by

Plaintiff here.  Such issues of first impression, of statutory construction and interpretation, and of statewide significance, should be decided by the state courts, interpreting state law.

Plaintiff further requests an award of her attorney's fees for wrongful removal.

RESPECTFULLY SUBMITTED this 2nd day of April, 2015.

**BARBARA J. FORDE, P.C.**

By:   _s/Barbara J. Forde_____
Barbara J. Forde, Esq.
20247 N. 86th Street
Scottsdale, AZ  85255
*Attorney for Plaintiff/Counterdefendant*

Copies of the foregoing served through
the ECF system on April 2, 2015:

Robert W. Norman
Solomon S. Krotzer
HOUSER & ALLISON
2929 N. Central Ave., Suite 1560
Phoenix, AZ  85012
*Attorneys for IndyMac Mortgage/*
*OneWest Bank,DBNTC as Trustee,*
*Ocwen, and MERS*

John Maston O'Neal
Krystal M. Aspey
QUARLES & BRADY, LLP
Renaissance One
Two North Central Ave.
Phoenix, AZ  85004
*Attorneys for Defendant Smith*

Barbara J. Forde____

17