1   Barbara J. Forde (013220)
2   BARBARA J. FORDE, P.C.
    20247 N. 86th Street
3   Scottsdale, AZ  85255
    BarbaraJForde@gmail.com
4   *Attorney for Plaintiff/Counterdefendant/*
    *Third-Party Defendants Saguaro Desert*
    *Trust & Steinberger*

5

6                   **UNITED STATES DISTRICT COURT**

7                        **DISTRICT OF ARIZONA**

8

9

10  KATRINA  PERKINS  STEINBERGER,        Case No. 2:15-cv-00450-ROS
    as Executor of the Estate of Charles A.
    Perkins, deceased, and individually,
11

12                  Plaintiff,                      **PLAINTIFFS
                                                    /COUNTERDEFENDANTS/THIRD
13          v.                                      PARTY DEFENDANTS' MOTION
                                                    FOR RECONSIDERATION**
14  INDYMAC MORTGAGE SERVICES, et
    al.,                                                    **--AND—**
15
                                                    **MOTION TO CERTIFY QUESTION
16                  Defendants.                     TO ARIZONA SUPREME COURT**

17
                                                    **(ORAL ARGUMENT REQUESTED)**
18

19  and Counterclaim

20

21

22  and Third-Party Complaint

23

24

25                  **I.     INTRODUCTION.**

26          Plaintiffs/Counterdefendants/Third-Party  Defendants  Katrina  Perkins  Steinberger,

27  Saguaro Desert Trust, and Katrina Perkins Steinberger as Executive Trustee, hereby file

28  their Motion for Reconsideration of the Court's Order ruling that Plaintiffs have not

"identified any coherent legal basis to believe [third-party] payments would have decreased Mr. Perkins' liability" on the loan, and that as of March 17, 2016, "Plaintiff still has not done so." Doc. 150 (quoting Doc. 123).  In fact, Plaintiffs have shown "a legally coherent basis for the Court to conclude that third-party payments are relevant…." Doc. 150.[1]  The payments being made on the debt are relevant for a panoply of reasons (***not*** just related to reducing the debt) as will be explained below.    In addition, applicable law mandates that Plaintiffs be allowed discovery related to the source of payments and the flow of principal and interest payments to the Certificateholders/Owners in the Trust. Plaintiffs further seek a hearing, to ensure that the Court will have every opportunity to discuss the issues with Plaintiffs and fully understand Plaintiffs' facts and supporting law before another ruling is issued.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

When this litigation was filed, Plaintiffs were fighting a non-judicial foreclosure. But during the pendency of the Special Action before the Arizona Court of Appeals, the Defendants voluntarily cancelled that sale.  Plaintiffs then won their appeal on seven (7) of their eleven (11) claims, and the Arizona Court of Appeals remanded the matter back to state court to proceed on the merits.  Because Ocwen Loan Servicing ("Ocwen") became the loan servicer in December of 2013, Plaintiffs amended their complaint upon remand to add Ocwen, which then removed the case to federal court.

Six years and nearly 6 months after the November 1, 2008 date of default, and more than six years after the debt was accelerated on February 6, 2009, Deutsche Bank as Trustee filed a Counterclaim and Third-Party Complaint for breach of contract, seeking judicial foreclosure.  In that Counterclaim, Deutsche Bank as Trustee purports to have standing as Counterclaimant to foreclose on the Plaintiffs.  Deutsche Bank as Trustee

---

[1] To the extent Plaintiffs did not previously provide the detail herein, that deficiency is due to the Court's rules related to discovery disputes, which limit the litigants to 1 page per issue, rather than allowing Plaintiffs to file the 17-page motion to compel discovery allowed by Federal Rule of Civil Procedure 37.

alleges to have suffered losses as a result of the default, and claims that it accelerated the debt.  *See* Doc. 14 at 46.  But a close reading of the Counterclaim reveals that Deutsche Bank as Trustee never claims it is owed the debt, and never claims that it declared a default.  *See* generally, Counterclaim Doc. 14 at 41-52.   Nevertheless, Deutsche Bank as Trustee then asks for a judgment of foreclosure.

The facts relevant to this Motion on payment-related issues are as follows:

*__Note Terms__*__:__ the Note dated May 25, 2005, states that: (a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder;'" (b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me…."  (c) "[i]f the Note Holder has required me to pay immediately in full … the Note Holder will have the right to be paid back by me…."  (d) "[i]n addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument') … protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."   *See* Note, attached as Exhibit 1 to the Second Amended Complaint ("SAC"), Doc. 12-5 at 55-58.

*__Deed of Trust Terms__*: Deed of Trust dated May 25, 2005: (a) requires the Lender to give the Trustor (i.e., the Plaintiff) 30 days' notice of default before accelerating the Note balance; (b) requires that the Lender give the Trustee written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, before the Trustee may initiate a sale; (c) states that if default is not cured, Lender "at its option" may accelerate the debt; (d) imposes a duty on the Lender to release the DOT "[u]pon payment of all sums secured by this Security Instrument…."; (d) secures to **Lender (*__not the__* *__beneficiary__*)** (i) the repayment of the Loan, and (ii) the performance of borrowers' covenants and agreements under the DOT and Note; and (e) states that if applicable law is

3

silent on whether the parties may agree to something by contract, "such silence shall not be construed as a prohibition against agreement by contract."   *See* DOT, Doc. 12-5, Exhibit 2, at p. 3; 9 ¶ 16; 11 ¶¶ 22, 23 (emphasis supplied).

    * ***The Pooling and Servicing Agreement ("PSA") Terms***: The PSA which governs the actions of the Trustee, Master Servicer, Servicer and others, provides: (1) the Trustee holds the Mortgage Loans and Trust Fund "in trust ***for the exclusive use and benefit of all present and future Certificateholders***" § 2.02; [2]  (2) the Trustee issues Certificates to or upon the order of the Depositor, evidencing ***the entire ownership of the Trust Fund*** § 2.06; (3) the Trustee is not responsible for the servicing of the Mortgage Loans, rather the Master Servicer does this §§ 3.01, 3.03; (4) the Trustee does not have to expend its own money on any of its duties and "shall be under no obligation to exercise any of the trusts, rights, or powers vested in it by [the PSA] or to institute, conduct or defend any litigation hereunder…under the request of the Certificateholders…unless [they] offered to the Trustee reasonable security or indemnity…."  § 8.02(f), (i); (4) the Trustee makes no representations about the validity of the PSA, the Mortgage Loans or any related document including the Certificates except as to the Trustee's execution of the Certificates § 8.03; (5) the Trustee "shall not be accountable for the use or application by … the Master Servicer of any funds paid to …the Master Servicer in respect of the Mortgage Loans…." § 8.03 and (6) the undertakings and agreements by the Trustee on behalf of the Trust Fund in the Certificates is made "not as a personal undertaking or agreement by the Trustee but is made and intended for the purpose of binding only the Trust Fund." § 8.03.

    ***The Deposition of Deutsche Bank as Trustee***: The Rule 30(b)(6) deposition of Deutsche Bank as Trustee was taken last Wednesday, March 16, 2016.   The witness Barbara Campbell provided testimony which confirms the terms of the Pooling and Servicing Agreement ("PSA") governing the Trust and went even further, including:[3]  (1)

---

[2]  Excerpts of the certified copy of the PSA are attached to Doc. 153 as Exhibit 3.

[3]  The transcript of the deposition is not yet available; the Undersigned represents to the best of her memory and ability, the testimony given by Ms. Campbell.

for its services, Deutsche Bank as Trustee recovers a fee of .002 percent of the principal on the loans in the Trust on a monthly basis; (2) the remainder of the income flowing from those payments is passed through to a clearing agency or agencies and in this case most likely is Depository Trust Company ("DTC"); (3) DTC then pays the funds over to DTC Participants; (4) the DTC Participants then pass the funds onto the ultimate recipients: the Certificateholders/Owners of the Trust;[4] (5) it is inaccurate to designate Deutsche Bank as Trustee's role as "investor," rather, the Certificateholders/Owners of the Trust are the "investors"; (6) Deutsche Bank as Trustee serves a "limited role" related to the Trust[5] as "paying agent," document custodian and "registrar" maintaining books and records; (7) the Trustee makes no decisions related to foreclosure of Mortgage Loans; (8) the *Trust itself* does not retain any funds related to principal and interest payments made by borrowers; (9) Deutsche Bank as Trustee has *suffered no loss* as a result of any default on the Loan at issue in this action; and (10) all foreclosure-related expenses in this action have been covered by the Servicer or Master Servicer, not Deutsche Bank as Trustee.

   ***The Advances of Principal and Interest by Third Party(ies)***:   Ms. Campbell, witness for Deutsche Bank as Trustee testified that Deutsche Bank as Trustee posts on its website, Statements to Certificateholders and loan level detail related to each loan in each Trust.   Certificateholders are directed to the site to review the Statements.   This information is provided to Deutsche Bank as Trustee by the servicer.   Ms. Campbell affirmed the Statements and loan level detail from Deutsche Bank as Trustee's website marked as exhibits at her deposition, which all show the principal balance of the Perkins loan *decreasing* for years after the borrower ceased payments, with a principal balance of $515,818.10 listed on the August 27, 2012 Statement, and a principal balance of

---

[4]  The information about payments from Deutsche Bank as Trustee to DTC, to DTC Participants and then to Certificateholders/Owners, is confirmed by an Issuer Letter of Representations from the Trust itself, signed by Deutsche Bank as Trustee, to DTC. A copy is attached to Doc. 153 as Exhibit 1, including the Affidavit of the custodian of DTC.
[5]  *See* Excerpt of Defendants' own Witness List, so describing the testimony of Ms. Campbell, attached to Doc. 153 as Exhibit 2.

$482,771.40 listed on the March 25, 2015 loan level detail report (Steinberger 003890).[6] Copies of examples of these documents have already been provided to this Court.  *See* Doc. 149, Exhibits 1 through 3 thereto, in particular at 8-19.   Ms. Campbell further testified that Deutsche Bank as Trustee provides loan level detail information to Bloomberg related to the Trust.  Copies of Bloomberg reports related to the at-issue Loan confirm that as of December, 2015, the principal balance of the Loan is listed at $482,771.36, and Ms. Campbell so testified.  *See* Doc. 149 at 70.  An updated Bloomberg report shows that as of February, 2016, the principal balance being reported by the servicer to Deutsche Bank as Trustee and by Deutsche Bank as Trustee to Bloomberg, is $482,771.36, and the principal balance decreased from June, 2008 to September, 2014, in spite of Plaintiffs' ceasing payments in November of 2008; interest payments continue to be advanced to this day.  *See* Bloomberg payment history for at-issue loan, attached hereto as Exhibit 2, Steinberger 008781.[7]   The Rule 30(b)(6) deponent for IndyMac Mortgage Services/OneWest Bank ("OWB"), Justin Rock, testified that it advanced principal and interest payments on loans in default.  *See* Doc. 148-1 at 72-75.  Mr. Rock testified that he did not know whether OWB made such advances related to the at-issue Loan.  *See* Deposition of Justin Rock, March 1, 2016, an excerpt of which is attached as Exhibit 3 at 132.

    ***The Deposition of OneWest Bank*:**  The entity that serviced the loan from March of 2009 through December of 2013, OWB, also testified about payments on the loan. OWB admits that it collected payments from borrowers, received a fee of .375%, advanced principal and interest in default by borrowers, passed the principal and interest due on the loans in the Trust, minus its fee, on to Deutsche Bank as Trustee.  *See* Exhibit 3 hereto, Depo. of Justin Rock at 114-115; 118-124.

---

[6]  An excerpt of this loan level detail report was filed at Doc. 148-1 at 10, but the line listing the at-issue loan was inadvertently cropped off; it is refiled here as Exhibit 1.
[7]  The print on the filed exhibit is small, but the parties and the Court can make it more legible by expanding the document size electronically through the ECF filing.

***Wire Transfers of Funds from Deutsche Bank as Trustee to DTC:***   DTC produced documents showing wires from Deutsche Bank as Trustee to DTC related to this Trust for the following dates: 11-25-08; 2-25-09; 5-25-10; and 2-25-15.  *See* Steinberger 008768-008769, attached hereto as Exhibit 4.  Ms. Campbell testified that Deutsche Bank as Trustee does wire funds to DTC for ultimate distribution to the Certificateholders/Owners of the Trust, and testified that she had no reason to believe that the amounts on the DTC wire documents were incorrect.  The Deutsche Bank as Trustee wires to DTC **do not** contain any loan level information; all payments are made with reference to CUSIP numbers, only.  *See id.*, showing CUSIP numbers only.  *Therefore, neither DTC nor DTC Participants, nor any Certificateholder/Owner ever receives any information about any default on any particular loan.*

***Counterclaim Allegations:***   The Counterclaim claims that Deutsche Bank as Trustee suffered losses as a result of borrower's default, and claims the following amounts are due and owing as of March 9, 2015:

| | |
|---|---|
| Principal | $576,109.56 |
| Interest | $121,265.40 |
| Escrow Advance | $ 27,107.94 |
| Late Charges | $   8,659.34 |
| Other Amounts | $   8,053.34 |
| Suspense Credits | $   (1,906.00) |
| Total | $739,289.58 |

*See* Counterclaim (Doc. 14) ¶ 50.  Deutsche Bank as Trustee's witness Barbara Campbell testified that she had no knowledge or information regarding the amounts due on the loan, stating that that is a servicer function, in spite of the fact that the Counterclaim is filed by Deutsche Bank as Trustee, which has the burden of proof.  Similarly, the Rule 30(b)(6) witness for OWB deflected questions related to the amounts due, deferring to the current servicer, Ocwen.

///

///

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   LEGAL ANALYSIS.

A.   <u>The Standard for Discovery in Federal Court</u>.

The only basis on which the Court has denied the discovery, is a failure to demonstrate that it is relevant.   Rule 26(b)(1), Fed.R.Civ.P. does require relevance, but also makes it clear that the information need not be admissible in evidence to be discoverable.  *Id*.   The United States Supreme Court set down the standard:

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment.  ***No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.***  Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.  The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise.

*Hickman v. Taylor*, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392 (1947)(emphasis supplied). "In all but clear cases the policy favoring discovery should be given effect and a greater showing ought to be required only where the opposing considerations are substantial."  *S. Ry. Co. v. Lanham,* 403 F.2d 119, 132 (5th Cir. 1968).

B.   <u>Third Party Payments by Entities Other Than Borrower are Relevant for a Myriad of Reasons</u>.

1.   <u>The Identity of the Note Holder/Lender and True Beneficiary Must be Determined Before the Contracts Can be Interpreted; Discovery Related to Entitlement to Payment Must be Allowed</u>.

The rights of the Note Holder/Lender include the payment stream to which it is entitled being secured by the DOT, the right to declare default, the right to accelerate the debt, the duty to provide the 30-day notice of default, and the right to elect to foreclose. The foundational question then, in any foreclosure matter, is who took the Note by transfer ***and*** is "entitled to payment"?  Nothing else can be resolved until that question is answered.

The evidence amassed by Plaintiffs to date demonstrates that the Certificateholders/Owners of the Trust, are the ones "entitled to payment" under the Loan. The documents show, and both Deutsche Bank as Trustee and OWB have testified, that while each may be in possession of the loan payments for a short time, they both collect their fee and, in true conduit fashion, pass the remainder on; the funds ultimately end up with the Certificateholders/Owners.  Therefore, the Certificateholders/Owners are the Note Holder/Lender and true beneficiary under the DOT.   This conclusion is supported by on-point law.

In Deutsche Bank as Trustee's Counterclaim for breach of contract and foreclosure, ***the burden of proof is on the Counterclaimant, not the Counterdefendant.*** *See, e.g., Steinberger,* 234 Ariz. at 140 ¶ 67 (citing *Thunderbird Metallurgical, Inc. v. Arizona Testing Laboratories,* 5 Ariz.App. 48, 50, 423 P.2d 124, 126 (1967))(in an action on a contract, plaintiff has the burden of proof to show: 1) a contract, 2) a breach, and 3) damages).

Deutsche Bank as Trustee must prove it has the right to enforce the Note and DOT. In order for Deutsche Bank as Trustee to show it may enforce the Note, it must show that it not only took the Note by transfer, but **the Note requires** that Deutsche Bank as Trustee also be "entitled to payment."  This is important because there are multiple conditions precedent to foreclosure which must be accomplished by the proper party, and in the proper manner, ***even if the borrower admits default***:

> There is no question, . . . that the Mortgage was in default and that the ***mortgagee*** was entitled to foreclose.  The only question is whether the proper party foreclosed the Mortgage in the proper manner.

*Kekauoha-Alisa v. Ameriquest Mortgage Co. (In re Kekauoha-Alisa),* 674 F.3d 1083, 1093 (9th Cir. 2012)(emphasis supplied).  The Ninth Circuit then affirmed that the proper party did <u>not</u> foreclose the mortgage in the proper manner, and <u>in spite of</u> admitted default, the Court **voided** the foreclosure sale. *Id.* at 1094.   The Arizona Court of Appeals has also held that a borrower's default is not the death knell of her claims, and that allegations

regarding the lack of authority to foreclose in the securitization context, are well plead under Arizona law:

> In this age of securitized home loans, the average borrower may be confused by the frequent transfers and reassignments of his home loan. Thus, if a borrower is in default and possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale, the borrower should not be prohibited from challenging its authority ….

*Steinberger*, 318 P.3d at 430 ¶ 41. Simply put, Deutsche Bank as Trustee must prove its authority and its standing to declare default, initiate foreclosure, and foreclose, even in the face of admitted default.[8]

In its Order denying Plaintiffs discovery related to payments from third parties, the Court is keying on Plaintiffs' admitted default. But under clear Arizona law, an admitted default ***does not make payments credited to the loan balance, irrelevant and non-discoverable.***

The Arizona Court of Appeals recognized the Note and DOT are the starting point for ***this controversy***, and that ***conditions precedent must be satisfied*** before a foreclosure:

> Specifically, the complaint alleges that Respondents failed to qualify as the "Note Holder" or "Lender" under the note and deed of trust, and that they failed to comply with certain procedures that the note and deed of trust required them to complete before they could attempt to foreclose on her home. These requirements include sending a 30-day notice of default and giving written notice of the default to the trustee.
>
> Respondents attempt to characterize these allegations as a "show-me-the-note" argument. However, Steinberger does not argue that the true beneficiary must show the note prior to foreclosure. Instead, she argues that prior to initiating foreclosure proceedings, the true beneficiary or trustee must at least follow the enforcement provisions contained in the note and deed of trust. Here, Steinberger contends that if Respondents are in fact the

---

[8] The Arizona state courts have established a clear policy of allowing borrower claims even in the face of admitted default, and even post-foreclosure; the Ninth Circuit has faithfully followed and applied this Arizona law. *See, e.g., Sitton v. Deutsche Bank Nat'l Trust Co.,* 233 Ariz. 215, 311 P.3d 237, 241 ¶ 16 (Ct. App. 2013)*; In re Mortgage Electronic Registration Systems,* 754 F.3d 772, 782-783 (9th Cir. 2014).

true beneficiaries or trustees of the deed of trust, their failure to comply with these provisions constituted a breach of the note and deed of trust.  These allegations specifically allege breaches of the deed of trust and promissory note.

*Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125, 141 ¶¶ 69, 70, 318 P.3d 419, 435 ¶¶ 69, 70 (citation omitted).

A recent California Supreme Court decision cements the importance of identifying the true Note Holder/Lender:

> **In itself, the principle that only the entity currently entitled to enforce a debt may foreclose on the mortgage or deed of trust securing that debt is not, or at least should not be, controversial**. It is a "straightforward application [ ] of well-established commercial and real-property law: a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent)." (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title* (2013) 63 Duke L.J. 637, 640.) Describing the copious litigation arising out of the recent foreclosure crisis, a pair of commentators explained: "**While plenty of uncertainty existed, one concept clearly emerged from litigation during the 2008–2012 period: in order to foreclose a mortgage by judicial action, one had to have the right to enforce the debt that the mortgage secured. It is hard to imagine how this notion could be controversial**." (Whitman & Milner, *Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note* (2013) 66 Ark. L.Rev. 21, 23, fn. omitted.)

*Yvanova v. New Century Mort. Corp.,* 62 Cal.4th 919, 365 P.3d 845, 199 Cal.Rptr.3d 66, 73 (2016)(emphasis supplied).

There is no doubt, therefore, that if the conditions precedent are not satisfied, a valid foreclosure **cannot occur.**  In particular here, the Note Holder/Lender: (1) must send the 30-day notice of default; (2) must be the one to accelerate the debt; (3) must be the one to elect to foreclose the DOT; (4) must be the one "entitled to payment;" and (5) is the only one secured by the DOT.

Therefore, a *primary and preliminary question* which **must be answered** in all foreclosure matters, is who is the Note Holder/Lender and true beneficiary "entitled to payment."  The *Steinberger* decision makes it clear that only the "true beneficiary" of the

11

DOT has standing to foreclose.  *Steinberger,* 234 Ariz. at 136 ¶ 43.   The California Supreme Court took this issue on as well:

> The borrower owes money not to the world at large but to a particular person or institution, and ***only the person or institution entitled to payment may enforce the debt by foreclosing on the security***.
>
> It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, supra, 63 Duke L.J. at p. 650.) "Such a view fundamentally misunderstands the mortgage contract. ***The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, the mortgagee may sell the property pursuant to the requisite legal procedure.***" (Ibid., italics added and omitted.)  The logic of defendants' no-prejudice argument implies that anyone, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to someone, though not to the foreclosing entity. This would be an "odd result" indeed. (Reinagel, supra, 735 F.3d at p. 225.) As a district court observed in rejecting the no-prejudice argument, ***"[b]anks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust."*** (Miller v. Homecomings Financial, LLC (S.D.Tex.2012) 881 F.Supp.2d 825, 832)

*Yvanova*, 199 Cal.Rptr.3d at 81 (emphasis supplied).

Deutsche Bank as Trustee is attempting to take away Plaintiffs' home without proving it is "entitled to payment;" and in fact, it ***is not*** entitled to payment.  The summary of Deutsche Bank as Trustee's Rule 30(b)(6) deposition testimony above, mandates the conclusion that Deutsche Bank as Trustee is not the Note Holder/Lender and true beneficiary, and it cannot foreclose the DOT.  The New York District Courts understand this.  *See, e.g., Royal Park Inv. SA/NV v. HSBC Bank, USA, N.A.,* 109 F.Supp.3d 587, 614 (S.D.N.Y. 2015)(any recovery in a suit by Certificateholders "would initially go to the

trusts, [but] it would imply pass through the trusts and be distributed to the Noteholders[9] and Certificateholders—the trusts themselves would not retain any payments."); *Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 439020 at *10 (S.D.N.Y. Feb. 3, 2016)(any recovery belongs to those who have a beneficial interest in the trust).

The summary of OWB's Rule 30(b)(6) deposition testimony above, proves that OWB is also not the Note Holder/Lender and true beneficiary.  Rather, it collects payments from borrowers, takes a .375% fee, and passes the remainder through Deutsche Bank as Trustee, to the ultimate recipients.

As Plaintiffs have been alleging since the beginning of their lawsuit, no Defendant is the Note Holder/Lender and true beneficiary; rather, the Certificateholders/Owners of the Trust are the only ones entitled to payment.  These allegations are now supported by facts beyond the Note, DOT and PSA terms, including the deposition of Deutsche Bank as Trustee and of OWB, the Issuer Letter from the Trust to DTC, Deutsche Bank as Trustee Statements to Certificateholders and loan level detail, Bloomberg reports, and more.

As is set forth in detail above, only the Note Holder/Lender and true beneficiary is secured by the DOT and may accelerate, declare default, elect to foreclose, and foreclose. Under basic contract law, the party seeking to foreclose must have suffered damages as a result of the purported contract breach.  Deutsche Bank as Trustee admits it is not the "investor," admits that it takes a fee of .002%, and further admits that it has suffered no loss as a result of any default on the Loan.  OWB admitted in its deposition that it did not purchase the Loan, and that it collects borrower payments but merely keeps a fee and passes the proceeds on.  Ocwen is yet to be deposed.

The payment-related information is relevant, and Plaintiffs have shown that there is a legally cognizable argument of relevance, which is all that is required at this stage.  The discovery should be allowed.

---

[9]  The term "Noteholders" in *Royal Park* refers to those holding notes issued by statutory trusts pursuant to Indentures, not any "holder" of a homeowner/borrower promissory note. 109 F.Supp.3d at 594.

13

2.     Under the Uniform Commercial Code, Payments "on behalf of" Borrower Pays the Instrument to the Extent of Those Payments.

The evidence Plaintiffs have uncovered shows, without a shadow of a doubt, that since November of 2008, someone is making payments of principal and interest which are *being credited to the Loan*.   The Statements to Certificateholders shows the principal balance decreasing and the interest being paid; Bloomberg records show that to this day, someone is making the accruing interest payments on the Loan.  Deutsche Bank as Trustee is reporting these facts to Certificateholders and showing the payments on the loan level detail for this very Loan; therefore, the amounts are clearly being credited to the Loan, thereby reducing the borrower's liability.   Under A.R.S. § 47-3602, these payments are being made "on behalf of" the borrower as shown in the Statements and loan level detail and as reported to the Certificateholders/Owners.

Thus Plaintiffs are entitled to discovery related to the identity of who is making these payments, in what amounts, on what bases.

3.     Payments made by Others, Affect Whether the Note Holder/Lender has Experienced a Default and Suffered Damages, a Highly Relevant and Discoverable Issue.

The evidence Plaintiffs have of third party payments reducing liability under the Loan, goes directly to the issue of whether the Note Holder/Lender and true beneficiary, has experienced a default.  If not, then no default can be called, no acceleration of the debt is valid, and certainly no foreclosure can occur.  If there has been no breach as to the Note Holder/Lender, foreclosure cannot occur.   If the Note Holder/Lender has sustained no damages pursuant to any breach, no foreclosure can occur.  Further, and critically, no loan level information is provided to Certificateholders, so even if they were aware that loans in the Trust were in default, it would be ***impossible*** for them to know which loans were in default, and more to the point here, ***impossible for them to declare that this Loan is in default, or accelerate it, or elect to foreclose on it***.

14

To prevail on its Counterclaim, Deutsche Bank as Trustee must prove entitlement to payment under the contract, that it experienced a breach, and the damages Deutsche Bank as Trustee sustained. Deutsche Bank as Trustee has already testified that it sustained no damages as a result of the Loan's default. Clearly, Plaintiffs are entitled to discovery on these payment issues.

C.   Plaintiffs Request Certification of this Issue of Statewide Importance, to the Arizona Supreme Court.

The United States Supreme Court directs that federal courts in diversity matters must follow state court decisions on state law issues, even if those decisions are not from the highest court of the state, and even if the federal court does not agree with the decision. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-37, 61 S.Ct. 179 (1940).

If state law on the subject is uncertain, the federal court must predict how the State's highest court would resolve the issue, and render a decision in conformity with the existing law. *Ryman v. Sears, Roebuck & Co.,* 505 F.3d 993, 994 (9th Cir. 2007); *Hemmings v. Tidyman's, Inc.,* 285 F.3d 1174, 1203 (9th Cir. 2002).

Here, the question of discovery of third party payments has twice been before this Court and twice the Court has both denied the discovery **and** left the door open for Plaintiffs to demonstrate entitlement to the discovery, later. But Plaintiffs are unable to obtain the information to demonstrate entitlement, without having the discovery. The Court has ordered Plaintiffs cannot have written discovery on the issue while at the same time stating Plaintiffs have "not yet" shown the Court that Plaintiffs have payment information to prove they are entitled to the payment information. This is an impossible standard. And now, this litigation is 3 weeks from the discovery cut off of April 8, 2016.

Accordingly, Plaintiffs now request that this Court certify the question of discoverability of the details of third party payments which have been applied to the loan[10]

---

[10]   Plaintiffs have evidence that payments of third parties have been credited to the borrower's debt, in the Statements to Certificateholders and the loan level detail posted by

(as proven by Deutsche Bank as Trustee's own Statements to Certificateholders), to the Arizona Supreme Court under A.R.S. § 12-1861.

Under A.R.S. § 12-1861, a federal district court may certify a question to the Arizona Supreme Court if the question certified may be determinative of the cause, and it appears to the district court that there is no controlling precedent in the Arizona Supreme or Appellate courts. Questions of state law related to foreclosure matters should be certified with greater frequency because diversity often allows removal, resulting in these cases being entrenched almost exclusively in federal court.

The United States Supreme Court explains that certification ensures "an authoritative response" from the court which should be deciding state law issues, and the judicial economy to be achieved:

> Certification procedure [] allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.
>
> * * *
>
> Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save "time, energy, and resources and hel[p] build a cooperative judicial federalism."

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 77, 117 S. Ct. 1055, 1073 (1997)(quoting *Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744 (1974)).

Given this novel and unsettled question of state law, and the fact that this payment issue now brought to light will continuously recur in lawsuits arising out of judicial and non-judicial foreclosure matters of loans in Real Estate Mortgage Investment Conduits ("REMICs"), Plaintiffs request that this Court certify the question of Plaintiffs' ability to

---

Deutsche Bank as Trustee, on its website. *See, e.g*., Doc. 153 and Exhibits 1 to 3 thereto, where Plaintiffs already provided this information to the Court.

pursue discovery related to third party payments which are clearly being credited to the debt, to the Arizona Supreme Court.

## IV.    CONCLUSION.

Based on the foregoing, Plaintiffs respectfully submit that the evidence they have to date demonstrates conclusively that they are entitled to obtain further written and deposition discovery related to payments made by third parties, which payments are (according to Deutsche Bank as Trustee), reducing liability on the debt, thereby calling into question the existence of default and whether given the structure of this REMIC, a default can ever be called on the Loan.  Given the novelty of this question and the fact that the answer may be determinative of this cause, Plaintiffs request that this Court certify this important state law question to the Arizona Supreme Court for resolution.


RESPECTFULLY SUBMITTED this 23rd day of March, 2016.


**BARBARA J. FORDE, P.C.**


By:    _s/Barbara J. Forde_____
       Barbara J. Forde, Esq.
       20247 N. 86th Street
       Scottsdale, AZ  85255
       *Attorney for Plaintiffs/Counterdefendants/*
       *Third-Party Defendants*

Copy of the foregoing served via
ECF system on March 23, 2016 to:

Robert W. Norman
Solomon S. Krotzer
HOUSER & ALLISON
2929 N. Central Ave., Suite 1560
Phoenix, AZ  85012
*Attorneys for IndyMac Mortgage/*
*OneWest Bank,DBNTC as Trustee,*
*Ocwen, and MERS*

Barbara J. Forde_____