Robert W. Norman (SBN 025328)
bnorman@houser-law.com
Solomon S. Krotzer (SBN 027985)
skrotzer@houser-law.com
HOUSER & ALLISON, APC
2929 N. Central Ave., Suite 1560
Phoenix, Arizona 85012
Phone: (480) 428-8370

Attorneys for Defendants Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., CIT Bank, N.A. and Defendant/Counterclaimant/Third-Party Plaintiff Deutsche Bank National Trust Company As Trustee For Indymac Indx Mortgage Loan Trust 2005-AR14, Mortgage Pass-Through Certificates Series 2005-AR14

# IN THE UNTED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KATRINA PERKINS STEINBERGER, as Executor of the Estate of Charles A. Perkins, deceased, and individually,<br><br>Plaintiff,<br><br>vs.<br><br>INDYMAC MORTGAGE SERVICES, a division of ONEWEST BANK, F.S.B., a Federally Chartered Savings Bank; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee of the INDYMAC INDX MORTGAGE LOAN TRUST 2005-AR14; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; OCWEN LOAN SERVICING, LLC, a Limited Liability Company; KEELEY KRISTINE SMITH, an Attorney licensed with the Arizona State Bar; JOHN AND JANE DOES 1-1000, XYZ CORPORATIONS 1-15; ABC LIMITIED LIABILITY COMPANIES 1-15; and 123 BANKING ASSOCIATIONS 1-15,<br><br>Defendants. | Case No. 2:15-cv-00450-ROS<br><br>Hon. Roslyn O. Silver<br><br>**MOTION FOR ATTORNEYS' FEES**<br><br>**FRCP 54; LRCIV 54.2; A.R.S. § 12-341.01** |

| | |
|---|---|
| 1<br>2<br>3 | DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2005-AR14, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-AR14, |
| 4 | Counterclaimant, |
| 5 | vs. |
| 6<br>7<br>8 | KATRINA PERKINS STEINBERGER, as Executor of the Estate of Charles A. Perkins, deceased, and individually, |
| 9 | Counterdefendants. |
| 10 | |
| 11<br>12<br>13 | DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2005-AR14, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-AR14, |
| 14 | Third-Party Plaintiff, |
| 15 | |
| 16 | vs. |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | SAGUARO DESERT TRUST; KATRINA PERKINS STEINBERGER, as Executive Trustee of Saguaro Desert Trust; M&I MARSHALL & ILLSLEY BANK, a Wisconsin Banking Corporation; QUALITY LOAN SERVICE CORPORATION, a California Corporation; RANCHO ALTA VIDA HOMEOWNERS' ASSOCIATION, an Arizona Non-Profit Corporation; DOE INDIVIDUALS OR ENTITIES 1-10; UNKNOWN HEIRS AND DEVISEES OF CHARLES A. PERKINS, DECEASED. |
| 25 | |
| 26 | Third-Party Defendants. |
| 27 | |
| 28 | |

Pursuant to Federal Rule of Civil Procedure 54(d); LRCiv 54.2 and A.R.S. § 12-341.01, Defendants, Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., CIT Bank, N.A. and Deutsche Bank National Trust Company As Trustee For Indymac Indx Mortgage Loan Trust 2005-AR14, Mortgage Pass-Through Certificates Series 2005-AR14 ("Defendants") hereby respectfully move for an award of attorneys' fees in the amount of $116,656.70 against Plaintiff Katrina Perkins Steinberger in her individual capacity and against the Estate of Charles Perkins, jointly and severally.

## I. INTRODUCTION

Under the factors set forth in A.R.S. § 12-341.01 and supporting case law, Defendants are entitled to their attorneys' fees incurred defending this lawsuit. While Defendants have been burdened with the costs of defending against Plaintiffs' meritless claims, Plaintiff Katrina Steinberger, who apparently inherited the subject property from her father Charles Perkins, has directly benefited from this litigation. Specifically, she has had the benefit of living in the subject property (worth over $700,000 and located in prestigious Paradise Valley) without making any mortgage payments or property tax payments since 2008.

As this Court pointed out, "[a]t the conclusion of this lengthy litigation, it appears Steinberger's main theory … never had a sound legal or factual basis"[1] [and] "…all of Steinberger's claims fail based on a lack of evidence, lack of a coherent legal theory, or both."[2] Through continued dilatory tactics, through misrepresentations to the Arizona Court of Appeals, and through years of litigation, Plaintiffs forced Defendants to jump through procedural hoop after procedural hoop even though *all* the evidence produced supports that DBNTC as Trustee has had the right to foreclose since 2005. For example, early in this litigation, Plaintiffs were shown the original loan documents signed by Charles Perkins, containing a blank endorsement.

---

[1] See Order on Motion for Summary Judgment (doc. 210), p. 39:20-22.
[2] See Order on Motion for Summary Judgment (doc. 210), p. 2:1-3.

Notably, Plaintiffs never disputed that they stopped making monthly payments towards the subject loan. Plaintiffs never disputed that Plaintiff Katrina Steinberger's father (Charles Perkins) borrowed money in 2005, that Mr. Perkins granted a consensual security interest against the subject property and that Mr. Perkins agreed to make monthly payments towards the subject loan or risk foreclosure. Rather, the entire lawsuit stems from the "conspiracy theory" argument that by examining the inner-workings of the subject mortgage-backed trust, Plaintiffs believed it would reveal that nobody was "entitled to payments" and therefore "nobody" ever had (and never will have) the right to foreclose.

## II. SUMMARY OF MAJOR TASKS

Attached to the Declaration of Solomon Krotzer, filed concurrently herewith, is a detailed accounting of all fees requested and the corresponding time spent on each task. Even though Plaintiffs filed this lawsuit more than six years ago, Defendants are only requesting fees from February 2015 until the entry of final judgment on January 23, 2017. Further, Defendants are not requesting fees associated with the prosecution of the judicial foreclosure. Instead, Defendants are only seeking fees related to the defense of Plaintiffs' meritless claims. In summary, defending against Plaintiffs' claims required the following major tasks, amongst other tasks as set forth in the billing entries:

**Client Communications:** Undersigned counsel represented defendants MERS, CIT Bank, Ocwen Loan Servicing, LLC and DBNTC as Trustee. At times, each of these parties required separate communications in order to keep each client apprised of the relevant issues and case developments, to keep each client apprised of settlement offers, to discuss possible settlement and make settlement recommendations, to request documents from the clients related to discovery requests, to discuss each client's respective responses to written discovery and obtain verifications, to obtain declarations and otherwise keep the clients apprised of key developments in the litigation.

**Communications with Opposing Counsel**: In light of several discovery disputes created by opposing counsel, and in light of inconsistent and untenable legal positions,

extensive communication with opposing counsel was required, often in writing. For example, this Court ordered the parties to meet "in person" and undersigned counsel did meet "in person" regarding discovery issues on October 16, 2015 and December 4, 2015. Specifically, these meetings related to Plaintiffs' position that Defendants were not entitled to review Plaintiffs' financial documents such as tax returns/bank records, Plaintiffs' dispute (later withdrawn) concerning the authenticity of loan documents and Plaintiffs' demand to "inspect" the original loan documents, and similar demands.

**Communications with Third Parties:** Plaintiffs issued countless subpoenas to third parties, including: Wells Fargo, JP Morgan Chase, The Northern Trust, Mellon Trust, Goldman Sachs, Credit Suisse, CitiGroup, Brown Brothers, BONYM-Pershing, Barclay's and since these subpoenas were improper and exceeded the scope of discovery, counsel was required to communicate with these third parties to inform them of Defendants' objections and explain the nature of this case. At times, undersigned counsel received unsolicited phone calls from attorneys from these entities inquiring about the nature of this litigation and why they were being subpoenaed over a loan they had no involvement with.

**Contested Removal:** Ocwen removed this case to federal court and undersigned counsel was required to defend Plaintiffs' motion to remand, which was denied. Plaintiffs attempted to argue that complete diversity did not exist by fraudulently joining an attorney who had no involvement with any issue in this case aside from being temporarily appointed the trustee under the Deed of Trust. This Court denied Plaintiffs' Motion to Remand.

**Complete State Court Record:** Pursuant to the removal statutes, undersigned counsel was required to file with this Court the complete state court record. This process was time consuming because prior to removal, the case had been mired in litigation since 2010, and the state court record included not only documents filed with the superior court, but also the Arizona Court of Appeals *and* the Arizona Supreme Court. Even after filing

thousands of pages, Plaintiffs' counsel insisted that the complete state court record had not been filed, which was incorrect.

**Mediation**: Plaintiffs forced the parties to litigate the issue of whether or not a representative of Ocwen could attend the mediation on behalf of the Trust. This required Defendants to file a Motion for Order Clarifying Mediation Order and also required undersigned counsel to procure declarations from Ocwen and DBNTC as Trustee explaining the relationship and confirming that DBNTC as Trustee authorized a representative of Ocwen to attend the mediation. The Motion for Order Clarifying Mediation Order was granted. Plaintiffs walked out of the mediation after a generous settlement offer was made to them that ended up being much more favorable than the final judgment eventually entered in this case.

**Court Ordered Questions:** In light of Plaintiffs' unreasonable positions and bad faith arguments regarding DBNTC as Trustee's lack of authority to enforce the Note, this Court ordered DBNTC as Trustee to answer any questions Plaintiffs had regarding these issues. Pursuant to this Court's orders, two detailed letters were sent to Plaintiffs' counsel regarding these issues.

**Discovery:** Discovery was intense and time consuming. Undersigned counsel prepared for and attended the depositions of Katrina Steinberger (in her individual capacity, as personal representative of the Estate of Charles Perkins and as representative of Saguaro Desert Trust), third-party witness Barbara Heggarty (a former roommate of Katrina Steinberger), and 30(b)(6) witnesses for DBNTC as Trustee, Ocwen and CIT Bank. Plaintiffs issued expansive depositions notices with 45 (CIT Bank), 50 (DBNTC) and 48 (Ocwen) separate topics of inquiry to which Defendants objected.

More than 4,000 documents were produced by Plaintiffs that needed to be reviewed and analyzed. Many of these documents were retrieved from the Securities and Exchange Commission and websites used by DBNTC as Trustee to communicate with its certificate holders and therefore had no relevance to any issue in this case. Notwithstanding, undersigned counsel was still required to review and analyze all of these documents to

determine relevancy. In addition, since Plaintiffs refused to disclose relevant bank records and tax returns, undersigned counsel was forced to issue subpoenas to all financial institutions listed in Plaintiffs' original loan application and received thousands of pages of bank records in response. Finally, there were hundreds of pages of documents related to the original loan transaction, including the original "wet ink" documents, that undersigned counsel needed to review and analyze.

In addition, Plaintiffs issued 77 separate written discovery requests to CIT Bank, 51 separate written discovery requests to DBNTC and 14 written discovery requests to Ocwen. Undersigned counsel also issued written discovery of its own to Plaintiffs. Finally, Plaintiffs issued third-party subpoenas to Wells Fargo, JP Morgan Chase, The Northern Trust, Mellon Trust, Goldman Sachs, Credit Suisse, CitiGroup, Brown Brothers, BONYM-Pershing, Barclay's and tried to depose Depository Trust & Clearing Corporation but this Court determined that the deposition exceeded the scope of discovery.

**Discovery Disputes:** As this Court is aware, Plaintiffs initiated several discovery disputes and lost all of them. For example, the parties submitted Joint Statements outlining discovery disputes on 10/26/2015 (doc. 91), 12/10/2015 (doc. 101), 12/11/2015 (doc. 103), 12/29/2015 (doc. 119) and 03/17/2016 (doc. 151). In summary, Plaintiffs engaged in "fishing expeditions" for documents related to the inner-workings of the subject Trust, and documents related to the securitization of the subject loan, in order to substantiate Plaintiffs' unfounded legal theory that no defendant could foreclose because no defendant had the right to receive payments. Also, Plaintiffs took the position that Defendants were not entitled to review bank records and tax returns of Plaintiffs, and this Court eventually ruled that this position was incorrect. The fact that Plaintiffs did not voluntarily produce bank records/tax returns required Defendants to issue subpoenas which took more time.

**Expert Witness Issues**: Plaintiffs filed an untimely expert report from a "securitization expert" and eventually an order was signed by this Court that this expert was not allowed to testify due to the untimely disclosure. The untimely report produced

was *36 pages.* Undersigned counsel was even required to file a motion to *enforce* the order previously entered regarding expert witnesses when Plaintiffs continued to insist they were entitled to rely on the expert opinion of the "securitization expert." Also, undersigned counsel was required to attend the physical inspection of the original loan documents. After all of this, Plaintiffs eventually agreed not to contest the authenticity of the loan documents.

**Joint Statement regarding Jurisdictional Issue:** In light of the US Supreme Court case *Americold Realty Trust v. Conagra Foods,* this Court ordered the parties to brief the issue of whether or not diversity jurisdiction still existed.

**Dispositive Motions:** Defendants filed their own motion for summary judgment, which included several declarations. Defendants' motion for summary judgment was granted. However, Defendants also had to respond to a motion for summary judgment filed by Plaintiffs, which was denied. The briefing resulted in a 40 page ruling from this Court.

### III. ARGUMENT

#### a. Eligibility

Defendants are eligible for attorneys' fees pursuant to A.R.S. § 12-341.01 which states in pertinent part that "in any contested action arising out of contract, express or implied, the court may award the successful party reasonable attorneys' fees." Arizona courts have "broadly interpreted" the statutory term "arising out of a contract." *Marcus v. Fox,* 150 Ariz. 333, 334, 723 P.2d 682, 683 (1986). A claim arises out of contract within the meaning of A.R.S. § 12-341.01 as long as a contract "was a factor in causing the dispute." *Id.* at 335.

Here, there is no question that Defendants were the "successful" parties. As evidenced by the final judgment (doc. 212) as well as the order granting Defendants' motion for summary judgment and *denying* Plaintiffs' motion for summary judgment (doc. 210), Plaintiffs are to take nothing by way of the Second Amended Complaint, which contained eight separate counts and 291 separate allegations. Further, for purposes of

determining the "successful" party, it is worth pointing out that DBNTC as Trustee prevailed in its judicial foreclosure counterclaim and Plaintiffs' attempts to avoid foreclosure were defeated. In short, it would defy logic to call the outcome of this case a victory for Plaintiffs.

Further, all issues in this case "arise" out of contract. All disputes stem from a mortgage loan signed by Charles Perkins, and the rights of the parties based on that contract. This included the rights of the defendant loan servicers (Ocwen/CIT Bank) to collect payments, initiate foreclosure proceedings and record certain documents, the right of MERS (who is mentioned in the loan documents as nominee for the original lender) to record certain documents and the contractual rights of DBNTC as Trustee to enforce the loan, amongst other rights. All of these disputed rights stem from the contract at issue in this litigation – the loan signed by Charles Perkins.

Therefore, Defendants are eligible for an award of attorneys' fees pursuant to A.R.S. § 12-341.01.

**b. Entitlement**

Under A.R.S. § 12-341.01(A) this Court should consider the "merits of the unsuccessful party's claim, whether the claim could have been avoided or settled, whether the successful party's efforts were completely superfluous in achieving the result, whether assessing fees would cause an extreme hardship, whether the successful party did not prevail with respect to all of the relief sought, the novelty of the legal question presented, and whether an award to the prevailing party would discourage other parties with tenable claim from litigating legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees." *Fulton Homes Corp. v. BBP Concrete,* 214 Ariz. 566, 569, 155 P.3d 1090, 1093 (App. 2007) (affirming trial court's award of fees).

These factors should be weighed in light of the purpose of the statute. "Because the statute provides that an award of fees should be made to mitigate the burden of litigation, the clear intent of the statute is that under ordinary circumstances the successful party in an action which falls under the statute is entitled to recover his reasonable

attorney's fees." *Grand Real Estate, Inc. v. Sirignano*, 139 Ariz. 8, 14, 676 P.2d 642, 648 (Ct. App. 1983) (vacating trial court's denial of request for fees).

All of these factors favor an award of fees to Defendants. First, over the course this litigation, several settlement offers have been presented and rejected by Plaintiffs. For example, Plaintiffs were offered $25,000 cash *and* a loan modification during the court-ordered mediation and they walked out. More recently, Plaintiffs declined an offer in which Defendants would agree to *waive their right to seek attorneys' fees* if Plaintiffs agreed not to appeal the judgment/contest the foreclosure. Plaintiffs refused all of these reasonable settlement offers.

Further, as evidenced by the order granting Defendants' motion for summary judgment, Plaintiffs' claims lacked merit. Notably, Plaintiffs continued to pursue certain claims even after Plaintiffs learned information resolving any potential doubt as to the legitimacy of the claims. For example, Plaintiffs argued to the Arizona Court of Appeals that the original Note was "lost or destroyed." Based on this allegation, Plaintiffs asserted that DBNTC as Trustee did not have "standing" to enforce the note. However, early in this litigation, Plaintiffs were given the opportunity to inspect the original loan documents, and even hired an expert witness to inspect the original loan documents to confirm their authenticity. Even after Plaintiffs *stipulated* to the authenticity of the loan documents, Plaintiffs *still* maintained that DBNTC as Trustee was not entitled to foreclose.

Finally, as set forth in Section II (above) a huge portion of the attorneys' fees in this case could have been avoided if Plaintiffs had taken reasonable and tenable positions. For example, Plaintiffs hired unnecessary experts and then disclosed their opinions in an untimely manner. Plaintiffs issued invalid subpoenas that were quashed. Plaintiffs refused to turn over bank records and tax returns that were eventually ordered to be disclosed. Even issues that should have been relatively straightforward (such as removal based on diversity jurisdiction) were overly complicated by Plaintiffs.

Therefore, Defendants are entitled to an award of attorneys' fees pursuant to A.R.S. § 12-341.01.

### c. Reasonableness of Requested Award

The award sought by Defendants is very reasonable given all of the work required to defend this case. Further, even though Defendants have the right to request fees from 2010 until the present, in an effort to be reasonable Defendants are only requesting fees incurred since 2015 (i.e. after the case was removed to federal court). Finally, even though Counterclaimant DBNTC as Trustee could seek its fees for prosecuting the judicial foreclosure, DBNTC as Trustee is not seeking these fees and they are omitted.

The best evidence of "reasonableness" is in the docket itself. The sheer volume of filings by Plaintiffs (many inappropriate and/or unnecessary), along with the length of each filing, combined with the fact that most of Plaintiffs' motions were ultimately denied, is proof of the work required to defend against Plaintiffs' claims against Defendants.

### IV. CONCLUSION AND RELIEF REQUESTED

In light of the foregoing, Defendants respectfully request an award of $116,656.70 against Plaintiff Katrina Perkins Steinberger in her individual capacity and against the Estate of Charles Perkins, jointly and severally.

Dated: February 6, 2017

**HOUSER & ALLISON, APC**

s/ Solomon S. Krotzer, Esq.
Robert W. Norman, Esq.
Solomon S. Krotzer, Esq.
HOUSER & ALLISON
A Professional Corporation
2929 N. Central Ave., Suite 1560
Phoenix, Arizona 85012
Attorneys for Defendants Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., CIT Bank, N.A. and Defendant/Counterclaimant/Third-Party Plaintiff Deutsche Bank National Trust Company As Trustee For Indymac Indx Mortgage Loan Trust 2005-AR14, Mortgage Pass-Through Certificates Series 2005-AR14

# CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Barbara J. Forde
BARBARA J. FORDE, P.C.
20247 N. 86th Street
Scottsdale, AZ 85255
barbarajforde@gmail.com
Attorney for Plaintiff

s/ Paige R. Kleinwolterink
Paige R. Kleinwolterink